IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| GRANTLEY PATENT HOLDINGS, LTD. | § | |
| (a Texas Limited partnership) | § | |
| | § | |
| *Plaintiff*, | § | Civil Action No. 9:06CV259 |
| | § | |
| v. | § | |
| | § | JUDGE RON CLARK |
| CLEAR CHANNEL COMMUNICATIONS, | § | |
| INC., ET. AL., | § | |
| | § | |
| *Defendants*. | § | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT

Plaintiff Grantley Patent Holdings, Ltd. moves for summary judgment on the inequitable conduct claims advanced by Defendants (collectively referred to as "Clear Channel"), arguing that Clear Channel has produced no evidence of materiality or intent to deceive. Inequitable conduct must be proven by clear and convincing evidence. Clear Channel has provided scant evidence of the failure to disclose material information or of submission of false information, and virtually no evidence of intent to deceive. Under the governing evidentiary standard, this exiguous record demonstrates no genuine issue of material fact regarding the inequitable conduct claims. Grantley's motion for summary judgment is granted.

### I. Background

The patents-in-suit generally relate to methods and systems of integrating a radio station's traffic-billing and yield management systems, as well as inventory management and revenue

1

projection.[1]  Each patent claims different aspects of the disclosed systems and methods.  All four

patents share the same specification, and are all continuations-in-part of an earlier application,

09/143,586.  The ´586 application was filed on August 31, 1998 with a provisional application

date of January 2, 1998.  The ´586 application eventually issued as U.S. Patent No. 6,260,047,

which is not asserted by Grantley in this suit.

## II. Standard of Review for Summary Judgment

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden

of demonstrating that there is no genuine issue as to any material fact and that it is entitled to

judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct.

2505, 2514 (1986).  Movant may show that the undisputed material facts affirmatively establish a

right to judgment.  Alternatively, movant may establish that the other party has the burden of

proof at trial, and has failed to "make a showing sufficient to establish the existence of an

element essential to [its] case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548,

2522 (1986).

In order to avoid summary judgment, the  party opposing the motion must come forward

with competent summary judgment evidence of the existence of a genuine fact issue.  *See*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1335

(1986); *Anderson*, 477 U.S. at 257, 106 S. Ct. at 2514.  The nonmoving party  "must do more

than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*,

475 U.S. at 586, 106 S. Ct. at 1356.   Fed. R. Civ.  P. 56 requires Clear Channel set forth specific

---

[1]Grantley alleges infringement of United States Patent Nos. 6,061, 691; 6,253,187; 6,567,824; and 6,920,464.  The background of the patents-in-suit and analysis of the relevant claim terms is set out in the court's January 8, 2008 Claim Construction Order [Doc. # 91].

facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 256, 106 S. Ct. at 2514.  Only a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment. *Anderson,*  477 U.S. at 248, 106 S. Ct. at 2510.  The dispute in this case is genuine if the evidence is such that a reasonable jury, properly instructed on the clear and convincing evidentiary standard, could return a verdict for Clear Channel on the issue of inequitable conduct. *Anderson,* 477 U.S. at 255, 106 S. Ct. at 2514 ("determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case.").  If the factual context renders a claim implausible (for example if the claim simply makes no economic sense)  nonmovants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits.  All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.  Only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468, 112 S. Ct. 2072, 2083 (1992).

### III. Inequitable Conduct

Applicants for patents have a duty to prosecute patent applications in the Patent Office with candor, good faith, and honesty. *Mollins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed.

Cir. 1995); *see also* 37 C.F.R. § 1.56.  A  breach of this duty constitutes inequitable conduct. *Honeywell Int'l, Inc., v. Universal Avionics* Sys., 488 F.3d 982, 999 (Fed. Cir. 2007).

In order to hold a patent unenforceable because of inequitable conduct, "there must be clear and convincing evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the U.S. Patent and Trademark Office." *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir. 2007).  Misrepresentation or non-disclosure must meet "threshold levels" of both materiality and intent. *Honeywell*, 488 F.3d at 999.  After these threshold levels have been met, the court should weigh the materiality and intent in order to determine "whether the equities warrant a conclusion that inequitable conduct occurred." *Id.* The greater the materiality of the information misrepresented or withheld by the applicant, the less evidence of intent the court will require in order to find inequitable conduct. *Id.*

Materiality is "determined from the viewpoint of a reasonable patent examiner, and not the subjective beliefs of the patentee." *Cargill*, 476 F.3d at 1366.  The applicant "must be chargeable with knowledge of the existence of the prior art or information, for it is impossible to disclose the unknown." *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987).

In a case that involves omission of a material reference to the PTO, there must be "clear and convincing evidence that the applicant made a deliberate decision to withhold a known material reference...Beyond that, the applicant must have withheld the material subject matter with the intent to deceive." *Eli Lilly & Co. v. Zenith Goldline Pharmas., Inc.*, 471 F.3d 1369, 1382 (Fed. Cir. 2006).  The applicant "must know, or should have known, of the materiality of

the reference for an inference of intent." *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, Inc., 439 F.3d 1335, 1341 (Fed. Cir. 2006).

## IV. Analysis

Because Grantley does not have the burden of proof as to Clear Channel's inequitable conduct claims at trial, it can obtain summary judgment by demonstrating to the court the absence of evidence to support an essential element of the claims. *See Celotex Corp.*, 477 U.S. at 325, 106 S. Ct. at 2254.  Once Grantley has done so, Clear Channel must go beyond the pleadings and designate specific facts that show there is a genuine issue of material fact for trial. *Id.* at 324, 106 S. Ct. at 2253; *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc).  If Clear Channel fails to meet this burden, summary judgment is mandatory. *Little*, 37 F.3d at 1076.  Whether Clear Channel meets this burden must be evaluated in light of the clear and convincing evidentiary standard that applies to their inequitable conduct claims. *See Anderson,* 477 U.S. at 255-56, 106 S. Ct. at 2514 ("the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that [Clear Channel]  has shown [inequitable conduct] by clear and convincing evidence or that [Clear Channel] has not.").

Clear Channel contends that inequitable conduct before the PTO occurred in three different ways.  First, they argue that the inventor of the patents-in-suit, Shane Fox, failed to advise the PTO of Maxagrid International, Inc's Reservation and Yield Management System; Maxagrid's 1997 website pages; and the revenue management systems of several different

companies.[2]  The Maxagrid system was described by Fox in the specifications of the patents-in-suit.  The prosecution history contains an Information Disclosure Statement submitted by Fox which lists the Maxagrid website as a reference.  The Examiner initialed the box next to the reference to demonstrate that he had considered the citation.  Clear Channel presented evidence of only four of the eight systems allegedly not disclosed.  Of these four, one is disclosed in the specification, and only the barest inference of intent could be drawn from the meager evidence offered about the other three.

Second, Clear Channel alleges that during prosecution of the ´047 and ´691 patents, Fox failed to disclose a book he wrote.  This book, Broadcast Revenue Management: Pricing Inventory Management in Today's Broadcast Environment (National Association of Broadcasters, 1997), was incorporated by reference into the specifications of all four of the patents-in-suit.

Finally, Clear Channel argues that Fred Mueller, a former Maxagrid[3] employee and named co-inventor on the ´047 patent with Shane Fox, was either wrongly included on the ´047

---

[2]Clear Channel makes a passing reference to products made by eight different companies in their response to Grantley's Motion for Summary Judgment ("A genuine issue of material fact exists as to whether Mr. Fox intentionally failed to disclose known inventory management systems to the USPTO, including those sold by Marketron International, Inc.; Radio Computing Services, Inc.; Altair Communications, Inc.; Talus Solutions, Inc.; Aeronomics, Inc.; Custom Business Systems, Inc.; Columbine JDS Systems, Inc.; and Integrated Radio Systems, L.L.C. ('IRS')").  Clear Channel only submitted evidence that Fox was aware of four of these systems: those made by Aeronomics, IRS, RCS, and Marketron   Of these four systems, Clear Channel only provides the court with a description of two (Aeronomics and IRS).  See Def. Resp. Pl. Mot. Sum. J., at pp. 6-9 [Doc. # 117].

[3]Maxagrid International, Inc. is a company co-owned by the inventor of the patents-in-suit, Shane Fox.

patent or improperly excluded as an inventor on the patents-in-suit.  This argument rests on the unsupported assumption that the inventor(s) of the patents-in-suit must have been the inventors of the ´047 patent, and vice-versa.

A.  Alleged Failure to Disclose Revenue Management Systems and Maxagrid's Website to the PTO

    1. *Maxagrid's system*

    Clear Channel's claim that Fox failed to disclose the Maxagrid inventory management system to the PTO is unsupportable because the system was actually disclosed no fewer than three times in the specifications of the patents-in-suit.[4]  Clear Channel argues that the inequitable conduct at issue arose from what Fox did *not* tell the PTO about the Maxagrid system, namely that while one of the purported novelties of the ´691 patent was the ability to include reservations in its price calculating, the aspect of the Maxagrid system that considered reservations or pending business in recalculation and price updating was never specifically disclosed.

---

[4]"Commercially available inventory management systems such as the Maxagrid system include a yield management system which produces a pricing forecast used to determine prices for sales of commercial time based on factors such as past trends and performance data which are updated periodically in order to maintain an accurate pricing model."  ´691 patent, col. 2, ll. 7-12. The Maxagrid system is also described as including a "price forecasting system, which is the part of the Maxagrid software which provides a user interface for a salesperson generating rate quotations for a customer."  ´691 patent, col. 2, ll. 25-26.  Finally, "a media property using a yield management system such as the Maxagrid system generates an order, which results in a confirmation, generally in printed form, that is printed out for station records and a copy mailed to the customer."  ´691 patent, col. 2, ll. 37-41.

Assuming that Clear Channel's argument is properly before the court[5] and that the reference is material, there is no evidence that Fox made a deliberate decision to withhold a known material reference when he explicitly incorporated the reference into the specifications of the patents-in-suit. *See Andrew Corp. v. Gabriel Elecs., Inc*., 847 F.2d 819, 823-24 (Fed. Cir. 1988)(affirming district court's finding of no intent to deceive when prior art in the applicant's possession was "disclosed generically in the patent application"); *Vandenberg v. Dairy Equip. Co.*, 740 F.2d 1560, 1568 (Fed. Cir. 1984)(stating that a description of a prior art device in the application is "inconsistent with intent to perpetrate fraud on the PTO," even though the applicants did not disclose that the device was, in fact, their own).

### 2. *Maxagrid's website*

Clear Channel's next argument is that Fox failed to disclose a September 9, 1997 Maxagrid web page that shows a system which included reservations or pending business when recalculating prices. Fox testified at deposition that the system was offered for sale or licensed by Maxagrid prior to December 1996. *See* Dep. of Shane Fox, Def. Resp. Pl. Mot. Sum. J., Ex. C, p. 35, l. 24 - p. 37, l. 25 [Doc. # 117]. Clear Channel argues that an undated webpage, which

---

[5]Grantley points out that Clear Channel's Answer states only that Fox "failed to advise the USPTO of Maxagrid International Inc.'s Reservation and Management System which was material to the patentability of the claims of the ´691 patent." *See* Doc. # 33, ¶ 12. Fed. R. Civ. P. 9(b) requires a party to plead, at a minimum, allegations of the particulars of "who, what, when, where, and how of the alleged fraud." *United States ex rel Williams v. Bell Helicopter Textron, Inc*., 417 F.2d 450, 453 (5th Cir. 2005)(internal citations and quotation omitted). Clear Channel does not dispute that "certain aspects of the existing Maxagrid systems were disclosed to the USPTO as reflected in the patent specifications." *See* Def. Resp. Pl. Mot. Sum. J., at p. 4 [Doc. # 117]. Based on the information in Clear Channel's Answer, the court questions whether the heightened pleading requirement for fraud allegations has been met, but will nevertheless consider Clear Channel's argument.

is "most likely not the same webpage," was "reviewed and considered" by the PTO, then proceeds to argue that because the webpage was not listed in the ´047 patent prosecution history, there is "no evidence that it was submitted to the USPTO."  Def. Resp. Pl. Mot. Sum. J. at p. 5 [Doc. # 117].

In fact, the webpage entitled "Maxagrid Home Services" was provided to the PTO by Fox in an Information Disclosure Statement ("IDS").  11/18/98 IDS, Pl. Mot. Sum. J., Ex. I [Doc. # 97].  The box next to the webpage was initialed by the Examiner.  As stated at the bottom of the IDS, this initialing means that the "citation was considered."  The serial number of the application is clearly printed on the IDS: 09/143,586.  This is the number of the application that later issued as the ´047 patent.  If the Examiner expressly considered the reference, as evidenced by his initialing of the appropriate box on the IDS, Clear Channel's argument that the webpage was never submitted to the PTO is just wrong.  Almost as an aside, Clear Channel submitted no facts that demonstrate an intent to deceive the PTO concerning the webpage.

### 3.  Other inventory management systems

Clear Channel next argues that Fox failed to disclose several prior art systems to the PTO. As already noted, Clear Channel mentions eight such systems but only submits evidence regarding four: the Aeronomics, IRS, RCS, and Marketron systems.  The specification of the patents-in-suit expressly discloses the Marketron system.  *See* ´691 patent, col. 2, ll. 32-36.  For the reasons discussed above with respect to the Maxagrid system, disclosure of the Marketron system in the specification is inconsistent with intent to deceive.

While Clear Channel argues that Fox was aware of the inventory management system offered by RCS called Pro Rate, they provide no description at all of this system.  Fox testified at deposition that he knew Pro Rate was a yield management system, but had never seen the product itself; his knowledge derived entirely from the fact that RCS was a competitor of Maxagrid and RCS held the program out to be a yield management system.  Dep. of Shane Fox, Def. Resp. Pl. Mot. Sum. J., Ex. C, at p. 116, l. 23 - p. 117, l. 19 [Doc. # 117].

Clear Channel argues elsewhere that both the IRS and Aeronomics systems anticipate and/or render certain claims of the patents-in-suit obvious because both contain all seven key elements of these claims.  *See* Def. Mot. Sum. J. Invalidity [Doc. # 98].  The court previously denied Clear Channel's Motion for Summary Judgment on Invalidity, finding that a genuine issue of material fact existed as to whether these prior art systems rendered the asserted claims invalid.

Assuming that the IRS, Aeronomics, and RCS systems have some of the same elements found in the present invention, cumulative information is not considered material.  *See Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1237 (Fed. Cir. 2008)(the court has "consistently" evaluated materiality consistent with the standard set out in PTO Rule 56, which defines material information as that which is "not cumulative to information already of record or being made of record in the application.").  The specifications of the patents-in-suit preface the particular examples of traffic billing and yield management systems given with the phrase "such as."  *See*

10

´691 patent, col. 2, ll. 32-41.  Duplicative references of other prior art systems with elements similar or identical to those contained in the examples provided are therefore not material.[6]

Looking at the second prong of the inequitable conduct test, Clear Channel is again able to offer little, if any, evidence of intent to deceive.  For the IRS system, Clear Channel points only to the deposition of Shane Fox, in which he testified that he "believed" that IRS sold a yield management system and that he had been aware that IRS was a Maxagrid competitor in the early 1990s.  Dep. of Shane Fox, Def. Resp. Pl. Mot. Sum. J., Ex. C, at p. 117, ll. 20-23 and p. 118, ll. 7-19 [Doc. # 117].  At the same time, Fox testified that while he was aware of the product's existence, he had never seen a demonstration or how it operated.

With respect to the Aeronomics system, Fox testified only that he knew the company sold products in the airline industry prior to 1997. Dep. of Shane Fox, Def. Resp. Pl. Mot. Sum. J., Ex. C, at p. 241, ll. 3-8, l. 24 - p. 242, l. 5.  Clear Channel's attempts to parlay this lone statement into intent to deceive the PTO is unavailing, especially in light of the fact that Clear Channel can offer no other evidence on the issue of intent.

Clear Channel has even less evidence regarding RCS' Pro Rate system.  They are able to cite only the deposition testimony of Fox that while he knew RCS called the Pro Rate a yield management system, he had never even seen the system operate.  Based on these facts, Clear

---

[6]Indeed, cutting down on non-material references is the primary aim of the proposed amendment to the IDS requirements, which would limit the number of documents an applicant is permitted to submit.  *See* Changes to Information Disclosure Statements Requirements and Other Related Matters, 71 Fed. Reg. 38,808-09 (Jul. 10, 2006)("Although § 1.56 clearly imposes a duty to disclose material information, that rule neither authorizes nor requires anyone to file unreviewed or irrelevant documents with the Office.  Such documents add little to the effectiveness of the examination process and, most likely, negatively impact the quality of the resulting Office determinations.").

Channel cannot present a genuine issue of material fact on inequitable conduct relating to the IRS, Aeronomics, or RCS Pro Rate systems.

B.  Alleged Failure to Disclose Fox's 1997/1998 Publication

Clear Channel's next allegation of inequitable conduct centers on a book written by Fox entitled <u>Broadcast Revenue Management: Pricing Inventory Management in Today's Broadcast Environment</u> (National Association of Broadcasters, 1997) and incorporated by reference into the specifications of the patents-in-suit.  *See* ´691 patent, col. 8, ll. 50-56.[7]  Clear Channel first alleges that the publication was not properly disclosed to the PTO during prosecution of the ´691 patent.  For the reasons discussed above, the fact that Fox explicitly incorporated this publication by reference into the ´691 patent specification is inconsistent with any intent to deceive.

Clear Channel's second allegation is that Fox's book was not provided to the PTO during prosecution of the ´047 patent and that, once faced with this, Fox attempted to change the publication date from 1997 to either January or April 1998.[8]  The ´047 patent is not asserted in

---

[7]Clear Channel also makes the strained argument that the other book written by Fox and disclosed in the specifications of the patents-in-suit, <u>Pricing and Rate Forecasting Using Broadcast Yield Management</u> (National Association of Broadcasters, 1992), was not properly disclosed during prosecution.  Because the book was explicitly incorporated by reference into the patent specifications, *see, e.g.*, ´691 patent, col. 8, ll. 47-52, and was clearly disclosed to the PTO even during prosecution of the ´047 patent, *see* 11/18/98 IDS, Pl. Mot. Sum. J., Ex. I [Doc. # 97], Clear Channel's argument fails.

[8]The date of publication could make a difference if the '047 patent was actually in dispute.  "Actions by the same inventor occurring within the statutory one-year grace period under 35 U.S.C. § 102(b) are not prior art which will render the inventor's work anticipated or obvious, and it is not inequitable conduct to fail to disclose such art to the Patent & Trademark Office during prosecution."  *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 990 n.9 (Fed. Cir. 1988).  The application of the ´047 patent was filed on August 31, 1998.  A publication date anytime in 1998 means that any failure to disclose the book is not inequitable conduct, while a publication date of 1997 means that any failure to disclose the book could be inequitable conduct

this suit, but Clear Channel argues that "inequitable conduct with respect to one or more patents

in a family can infect related applications." *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223,

1230 (Fed. Cir. 2006); *see also Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804,

809-812 (Fed. Cir. 1990).

Assuming that the 1997 or 1998 reference is material and ignoring Clear Channel's lack

of evidence on intent to deceive the PTO, the validity of the ´047 patent is not before the court.  It

is difficult to imagine how any inequitable conduct with respect to the ´047 patent "infected" the

four later patents when those patents explicitly incorporated the publication by reference into

their specifications.  Any potential defect was cured by this inclusion.[9]

C.  Alleged Inequitable Conduct Regarding Fred Mueller's Inventorship Status

Clear Channel's final claim of inequitable conduct alleges that Fred Mueller was

incorrectly named as an inventor on the ´047 patent and/or incorrectly excluded as an inventor on

the four patents-in-suit.

Issuance of a patent creates a presumption that the inventors named on the patent are the

"true and only inventors." *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460

(Fed. Cir. 1998).  A patented invention may be the work of two or more joint inventors.  *See* 35

---

depending on the precise publication date.

[9] Clear Channel argues in their Response to Grantley's Motion for Summary Judgment
that the affidavit of Shane Fox included in Grantley's motion (regarding certain documents
related to the publication of Fox's 1997 or 1998 book) is inadmissible hearsay and cannot be
authenticated.  *See* Doc. # 117 at pp. 14-15.  Even if the court were to accept Clear Channel's
argument and disregard Fox's affidavit, the result reached with respect to this aspect of Clear
Channel's inequitable conduct claims would remain the same.

U.S.C. § 116.  Since "'[c]onception is the touchstone of inventorship,' each joint inventor must generally contribute to the conception of the invention." *Ethicon*, 135 F.3d at 1460 (quoting *Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994)). "Conception is the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Hybridtech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986)(internal quotation omitted). An idea is considered to be "definite and permanent" when "one of ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." *Burroughs Wellcome*, 40 F.3d at 1228.

Each of the joint inventors does not have to make the same type or degree of contribution to the invention, 35 U.S.C. § 116; rather, "each needs to perform only a part of the task which produces the invention.  On the other hand, one does not qualify as a joint inventor by merely assisting the actual inventor after conception of the claimed invention." *Ethicon*, 135 F.3d at 1460.  Someone who only provides the actual inventor with "well-known principles or explains the state of the art without ever having a firm and definite idea of the claimed invention as a whole does not qualify as a joint inventor." *Id.* (internal quotation and citations omitted). Additionally, "one who simply reduced the inventor's idea to practice is not necessarily a joint inventor, even if the specification discloses that embodiment to satisfy the best mode requirement." *Id.*

With respect to the ´047 patent, Clear Channel's sole evidence on this point is the deposition testimony of Fox, in which he stated that Mueller did not "invent" anything in the

´047 patent.  Fox testified that Mueller had nothing to do with the conception of the invention, but merely wrote computer code used to implement Fox's ideas.  *See* Dep. of Shane Fox, Def. Resp. Pl. Mot. Sum. J., Ex. C, at p. 48, l. 15 - p. 49, l. 24 [Doc. # 117].  Clear Channel argues that the submission of a declaration to the PTO during prosecution that Mueller was an inventor of the ´047 patent, when Fox now claims he was not, is a breach of the duty of good faith and candor Fox owed to the PTO.  As noted above, the ´047 patent is not at issue in this suit.

Assuming materiality and the relevance of inventorship on a patent not asserted in this case, Clear Channel shows no evidence of intent to deceive the PTO as to the patents-in-suit. Fox's deposition, relied upon so heavily by Clear Channel, indicates that the reason Mueller was included on the ´047 patent was because he had assisted in the implementation.  Dep. of Shane Fox, Def. Resp. Pl. Mot. Sum. J., Ex. C, at p. 48, ll. 18-22.  At best, this points toward a confusion over what was likely a difficult inventorship determination regarding the ´047 patent. The law regarding inventorship is complex, and it is often difficult to distinguish between an individual who contributed to the invention's creation and one who merely reduced it to practice. *See , e.g., C.R. Bard, Inc. v. M3 Sys., Inc*., 157 F.3d 1340, 1352-53 (the "difficulty of determining legal inventorship has been recognized" as "one of the most difficult issues in American patent law.").

Clear Channel points to no evidence that Mueller should have been named as an inventor on the patents-in-suit other than the fact that he was named as a co-inventor on a Canadian patent and corresponding PCT application whose claims "mirror" the patents-in-suit.  Def. Resp. Pl. Mot. Sum. J. at p. 14 [Doc. # 117].  According to Clear Channel, the PCT application claims "correspond generally" to certain issued claims of the four asserted patents, while the issued

15

Canadian patent claims are the same as those in the ´691 and ´824 patents.  *Id.* at n.12.

Accepting Clear Channel's argument would require the court to first assume that PCT and U.S.

patent inventorship requirements are identical, and then to assume that Mueller was not included

as an inventor merely because the PCT application claimed priority to the ´586 U.S. application

(later the ´047 patent, on which Mueller was a listed inventor).  Finally, even assuming that

Mueller should have been included as an inventor and was not, Clear Channel provides little, if

any, evidence of intent to deceive.

    If Clear Channel had wanted to present evidence of inventorship relevant to the patents-

in-suit, they could have deposed Mueller or the attorney who prosecuted the ´047 patent.  They

chose not to do so.  The mere fact that Fox apparently did not consider Mueller to be an inventor

on these patents, without more, is not sufficient to sustain Clear Channel's inequitable conduct

claims.

### V.  Conclusion

    The court must evaluate Clear Channel's burden on summary judgment in light of the

clear and convincing evidentiary standard that applies to their inequitable conduct claims at trial.

Clear Channel's allegations are supported by evidence most accurately characterized as paltry

which, at best, permits a tenuous inference that inequitable conduct might exist.  Such a showing

on summary judgment would be marginal if Clear Channel's burden of proof was by a

preponderance of the evidence.  It falls far short of supporting a reasonable jury finding that

inequitable conduct exists by clear and convincing evidence.  If a jury did find for Clear Channel

under the facts in the record, the court would have no choice but to grant judgment as a matter of

law.   There is no reason why the time of the court, the parties, and the citizens serving as jurors should be wasted in anticipation of this outcome.

IT IS THEREFORE ORDERED that Plaintiff  Grantley Patent Holdings, Ltd.'s Motion for Summary Judgment of No Inequitable Conduct [Doc. # 97] is GRANTED.

So **ORDERED** and **SIGNED** this **31** day of **March, 2008.**

_____
Ron Clark, United States District Judge

17